# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JOHNNY L. YOUNG, JR.                                                                  PLAINTIFF

v.                        5:16CV00306-BSM-JJV

GREG BOLIN, Chief Administrator,
Dub Brassell Adult Detention Center; *et al.*                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Johnny L. Young, Jr. ("Plaintiff") brings this action *pro se* and under 42 U.S.C. § 1983. (Doc. No. 2.) He alleges Defendants, officials at the W.C. "Dub" Brassell Adult Detention Center, failed to protect him from an attack by another inmate and failed to provide medical care for an injury to his hand sustained in the attack. (*Id*. at 4-10.) Defendants Greg Bolin, Edward Adams, and Darrell Elkin have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 34.) Plaintiff has responded (Doc. Nos. 37, 38), so this matter is now ripe for a decision. After careful review, and for the following reasons, I find the Motion for Summary Judgment should be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. ANALYSIS

### A. Official Capacity Claims

First, Plaintiff has sued Defendants in both their personal and official capacities. (Doc. No. 2 at 2.) Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166. Thus, Plaintiff's official capacity claims against Defendants are to be treated as claims against Jefferson County. Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Jefferson County that caused or contributed to his alleged injuries. Accordingly, his official capacity claims against Defendants should be dismissed.

### B. Personal Capacity Claims

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 35 at 9.) Although their primary argument is that Plaintiff has failed to establish a constitutional violation, I elect to evaluate the immunity issue first. Qualified immunity is "immunity from suit rather than a mere defense to liability"; therefore, immunity issues should be resolved "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the

5

light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson*, 555 U.S. at 232; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

1. Failure to Protect

Plaintiff alleges he was attacked by his cellmate on the morning of July 30, 2016. (Doc. No. 2 at 4-5.) He states his cellmate threatened him repeatedly and blocked him from getting to the intercom in their cell, then kicked him in the chest and nearly choked him to death. (*Id*. at 4.) Plaintiff alleges another cellmate came to his aid and together they were forced to knock the attacker unconscious in order to get him to stop the attack. (*Id*. at 5.) According to Plaintiff, this incident happened directly in front of a camera; he questions where the deputy assigned to his pod was and why the deputy monitoring the cameras did not send help. (*Id*. at 4-5.) Plaintiff alleges security breaches at the detention center are common, and he lists several incidents, occurring both before and after the

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

July 30, 2016 assault, as examples. (*Id*. at 5-7.) Plaintiff states he has experienced constant fear and a sense of helplessness because he does not feel safe. (*Id*. at 7.) Plaintiff also states he submitted multiple grievances concerning "security risks and concerns," and Defendants Bolin and Adams responded either by agreeing to look into the issue or by assuring Plaintiff that deputies make routine security checks. (*Id*. at 4.)

The Eighth Amendment[2] requires prison officials to take reasonable measures to guarantee the safety of inmates and to protect them from violence at the hands of other inmates. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). An Eighth Amendment claim for failure to protect is comprised of two elements. *Riley v. Olk-Long*, 282 F.3d 592, 595 (8th Cir. 2002). First, an inmate must show he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. (citing *Farmer*, 511 U.S. at 834). Second, the inmate must establish prison officials recklessly disregarded that risk. *Id*. For purposes of failure-to-protect claims, it does not matter "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Hott v. Hennepin Cty., Minn.*, 260 F.3d 901, 906 (8th Cir. 2001) (quoting *Farmer*, 511 U.S. at 843). The question is whether a prison official has a "sufficiently culpable state of mind," meaning he is deliberately indifferent to an inmate's safety. *Riley*, 282 F.3d at 595 (quoting *Farmer*, 511 U.S. at 834). The prison official's state of mind is measured by a subjective, rather than

---

[2]Although Plaintiff was a pretrial detainee at the time of the alleged violations (Doc. No. 2 at 3), pretrial detainees are entitled to at least as much protection as convicted inmates, and their failure-to-protect claims are analyzed under the same Eighth Amendment analysis used for similar claims brought by prisoners. *See, e.g.*, *Perkins v. Grimes*, 161 F.3d 1127, 1129-30 (8th Cir. 1998).

an objective, standard. *Id*. He must both know of and disregard an excessive risk to inmate safety; in other words, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Defendants contend Plaintiff has not shown they were aware of an excessive risk to his safety, as they were not aware of any facts from which such an inference could be drawn. (Doc. No. 35 at 5.) Plaintiff has not alleged Defendants had any reason to believe Plaintiff's cellmate posed a threat to his safety, and Plaintiff does not claim to have perceived such a threat himself prior to this incident. Instead, Plaintiff cites to a general lack of security at the detention center, pointing to various security breaches occurring over time. But even assuming these "institution-wide deficiencies" existed and were known to Defendants Bolin and Adams, whom Plaintiff acknowledges were in supervisory roles, an unreasonable failure to cure the deficiencies does not rise to the level of deliberate indifference. *Crow v. Montgomery*, 403 F.3d 598, 602-03 (8th Cir. 2005). Even if Defendants acted unreasonably, and even if they might have taken certain measures to prevent the attack Plaintiff endured, "'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim." *Id*. at 602 (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)). Additionally, the security breaches Plaintiff points to resulted from cell doors being left open or inmates gaining access to computers which allowed them to open cell doors. (Doc. No. 2 at 5-7.) There is no basis to find these incidents would have placed Defendants on notice that Plaintiff might be attacked by an inmate with whom he shared a cell.

Even assuming Defendants were aware of an excessive risk to Plaintiff's safety, Plaintiff has not shown they recklessly disregarded such a risk. Plaintiff suggests the deputy assigned to his pod should have intervened and the deputy responsible for monitoring the cameras should have noticed and sent help. (*Id.* at 5.) But Plaintiff acknowledges his attacker kept him from reaching the intercom in his cell and, when he was finally able to reach the intercom and call for help, deputies responded. (*Id.*) Moreover, even if it could be concluded that Defendants' failure to monitor the cameras was unreasonable, again, reasonableness is a negligence standard and negligence cannot give rise to an Eighth Amendment failure-to-protect claim. *See Pagels*, 335 F.3d at 742 (quoting *Jackson*, 140 F.3d at 1152).

For these reasons, Plaintiff has failed to show Defendants violated his constitutional rights by disregarding a known risk to his safety. Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendants are entitled to qualified immunity on Plaintiff's failure-to-protect claim.

2. Medical Care

Plaintiff alleges his right hand was injured in the July 30, 2016, attack – specifically, it was swollen, bluish and purplish in color, and hurting badly. (Doc. No. 2 at 8.) He acknowledges he was seen by a nurse that day but claims she did nothing other than look at his hand and place him on the list to see a doctor. (*Id.*) Plaintiff suggests he should have been given a wrap or splint, icepacks, and pain medicine, which was apparently denied because he was already taking 800 milligrams of ibuprofen twice daily for tooth pain. (*Id.*)

Plaintiff states he was seen on August 8, 2016, by Defendant Elkin, a doctor, who likewise ordered no wrap or splint, icepacks, or pain medicine but did order x-rays. (*Id.*) Plaintiff states he underwent x-rays on August 14, 2016, and saw a nurse on August 22, 2016, who told him the x-rays showed no abnormalities. (*Id.*) He states he was seen again by Defendant Elkin on September 12, 2016, and was told there appeared to be an old fracture in his wrist. (*Id.*) Plaintiff disagrees with this assessment and states he should have been given an MRI to check for damage to his cartilage, tendons, and muscles. (*Id.* at 9.) He claims his hand is now deformed and he has never been given "even the basic medical care." (*Id.*)

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.[3] *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id.* at

---

[3] Again, because Plaintiff was a pretrial detainee at the time of the alleged violations (Doc. No. 2 at 3), his claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam). Nonetheless, the same "deliberate indifference" standard has been held to apply. *Id.* at 152-53 (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043 (8th Cir. 1989)).

104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id*. at 105. Where an alleged constitutional violation is premised on a delay in providing access to medical care, the plaintiff must show that officials ignored an acute or escalating situation involving a serious medical condition. *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

Defendants contend they are entitled to qualified immunity on this claim because Plaintiff has not shown they were deliberately indifferent to a serious medical need. The evidence submitted in support of Defendants' Motion supports this contention. According to the detention center's incident report regarding the July 30, 2016 attack, Plaintiff was seen by a nurse after the attack. (Doc. No. 35-1 at 3.) He submitted a medical request the following day, reporting his hand was swollen, dark bluish, and hurting, and he was placed on sick call. (Doc. No. 35-2.) Plaintiff was examined by Defendant Elkin on August 3, 2016. (Doc. No. 35-3 at 1.) Defendant Elkin ordered an x-ray, which was performed on August 8, 2016. (*Id.*, Doc. No. 35-4.) The x-ray showed what appeared to be an old fracture but "no acute fracture or dislocation." (Doc. No. 35-4.) After Plaintiff initiated this action, he continued to complain of pain. (Doc. No. 35-3 at 2.) Although a report dated October 17, 2016, noted no edema or redness, another x-ray was ordered. (*Id.*) The second x-ray, performed on October 25, 2016, also showed "[n]o acute fracture or dislocation." (Doc. No. 35-5 at 2.) Plaintiff saw an orthopedist on November 21, 2016, and was prescribed pain medicine, a splint, and ice/heat. (Doc. No. 35-6.) The orthopedist did not order any follow-up but said he would consider an MRI in three months if the pain

persisted. (*Id.*) Plaintiff did undergo an MRI on April 3, 2017. (Doc. No. 35-7.) The report noted only "degenerative changes and bone marrow edema." (*Id.* at 1.)

Defendants' evidence demonstrates there was no denial of medical treatment, nor was there any delay in providing it. Plaintiff was examined by a nurse immediately after the attack and was promptly placed on sick call when he filed a request the next day, seeing a doctor only three days later. Two x-rays were timely performed, and despite the fact they showed no acute abnormalities, Plaintiff was referred to an orthopedist for further examination and treatment. Although Plaintiff suggests the nurse at the detention center and Defendant Elkin should have done more for him, a showing of deliberate indifference requires more than mere disagreement with treatment decisions. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Even if the treatment initially provided to Plaintiff was somehow inadequate, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106.

For these reasons, Plaintiff has failed to show Defendants were deliberately indifferent to his serious medical need. Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendants are entitled to qualified immunity on Plaintiff's claim of inadequate medical care.

## IV.  SUMMARY

Because Plaintiff has not identified any official policy or unofficial custom of Jefferson County that caused or contributed to his alleged injuries, his claims against Defendants in their official capacities should be dismissed. Plaintiff's claims against

Defendants in their personal capacities should be dismissed on the basis of qualified immunity, as the facts alleged or shown, construed in the light most favorable to Plaintiff, do not demonstrate a constitutional violation.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 34) be GRANTED.

2. Plaintiff's Complaint (Doc. No. 2) be DISMISSED with prejudice.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 23rd day of May, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE